IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**STATE FARM FIRE AND CASUALTY**
**COMPANY**                                                                                       **PLAINTIFF**

**V.**                                            **CIVIL ACTION NO. 1:11-CV-304-KS-JMR**

**TOM ANDERSON, et al.**                                                              **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

For the reasons stated below, the Court **denies** the Motion for Summary Judgment [102] filed by Defendants David Grunenwald; Harbor House Property Owners Association, Inc.; Carl Joffe; and Stanley Politano. But the Court **grants** the Motion for Summary Judgment [105] filed by Plaintiff State Farm Fire and Casualty Company.

### I. BACKGROUND

This is an insurance coverage dispute arising from a case filed in the Chancery Court of Hancock County, Mississippi. The state court plaintiffs are property owners in the Harbor House neighborhood in Diamondhead, Mississippi. They seek the dissolution of the Harbor House Property Owners Association, Inc. (the "Association"), a Defendant here. They also allege that Carl Joffe, David Grunenwald, and Stanley Politano – individual Defendants here – used their positions as members of the Association's Board of Directors for self-dealing and to facilitate a takeover by a gaming corporation which sought to build a casino in or near the neighborhood.

Plaintiff issued two insurance policies to the Association: a Condominium/Association Policy (the "Condo" policy) [94-6], and a Commercial

Liability Umbrella Policy (the "Umbrella" policy) [94-7]. It also issued a Homeowner's Policy [94-8] and Personal Liability Umbrella Policy [94-8] to Defendant Carl Joffe. Plaintiff seeks a declaratory judgment that it has no duty to defend or indemnify the Association, Joffe, Grunenwald, or Politano in the underlying case. The Court now considers the parties' cross-motions for summary judgment.

## II. DISCUSSION

### A. *Standard of Review*

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (punctuation omitted). The nonmovant "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* (punctuation omitted). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812.

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). If a genuine dispute of material fact exists, "the court must view the facts and the inference to be drawn

therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. But when "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). Likewise, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002). Summary judgment is mandatory "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 766 (5th Cir. 2011).

### B.  *Interpretation of Insurance Policies*

The Court's ultimate goal in applying an insurance policy is to "render a fair reading and interpretation of the policy by examining its express language and applying the ordinary and popular meaning to any undefined terms." *Corban v. United Servs. Auto. Ass'n*, 20 So. 3d 601, 609 (Miss. 2009). "In Mississippi, insurance policies are contracts, and as such, they are to be enforced according to their provisions." *Id.*

> First, where an insurance policy is plain and unambiguous, a court must construe that instrument, like other contracts, exactly as written. Second, it reads the policy as a whole, thereby giving effect to all provisions. Third, it must read an insurance policy more strongly against the party drafting the policy and most favorably to the policy holder. Fourth, where it deems the terms of an insurance policy ambiguous or doubtful, it must interpret them most favorably to the insured and against the insurer.

> Fifth, when an insurance policy is subject to two equally reasonable interpretations, a court must adopt the one giving the greater indemnity to the insured. Sixth, where it discerns no practical difficulty in making the language of an insurance policy free from doubt, It must read any doubtful provision against the insurer. Seventh, it must interpret terms of insurance policies, particularly exclusion clauses, favorably to the insured wherever reasonably possible. Finally, although ambiguities of an insurance policy are construed against the insurer, a court must refrain from altering or changing a policy where terms are unambiguous, despite resulting hardship on the insured.

*Nationwide Mut. Ins. Co. v. Lake Caroline, Inc.*, 515 F.3d 414, 419 (5th Cir. 2008); *see also Corban*, 20 So. 3d at 609; *Guidant Mut. Ins. Co. v. Indem. Ins. Co. of N. Am.*, 13 So. 3d 1270, 1281 (Miss. 2009); *United States Fid. & Guar. Co. v. Martin*, 998 So. 2d 956, 963 (Miss. 2008).

### C.     *Duty to Defend*

To determine whether an insurance company has a duty to defend its policyholder against suit, the Court looks "at the facts alleged in the complaint, together with the policy." *Auto. Ins. Co. of Hartford v. Lipscomb*, 75 So. 3d 557, 559 (Miss. 2011). An insurer has a duty to defend once it "has knowledge that a complaint has been filed that contains allegations of conduct covered by the policy." *Id.* There is no duty to defend if "the alleged conduct falls outside the policy's coverage," but if the insurer "becomes aware that the true facts, if established, present a claim against the insured which potentially would be covered under the policy, the insurer must provide a defense until it appears that the facts upon which liability is predicated fall outside the policy's coverage." *Id.*

   1.     *Allegations in the Underlying Case*

4

The Harbor House neighborhood sustained serious damage in Hurricane Katrina. The Association members who brought the underlying case allege that Carl Joffe used his position on the Association's Board of Directors to delay rebuilding after the hurricane. Among other things, they allege that he encouraged an amendment to the neighborhood's covenants which required that the Board of Directors approve all plans to rebuild. Some of the Association's members grew frustrated with the delay and sold their lots. Joffe purchased one such lot, while an associate of his purchased others. They then sold the lots to Diamondhead Real Estate, LLC ("DRE"), providing DRE with a majority ownership of the neighborhood and control of the Board of Directors.

DRE appointed its own representatives to the Board: David Grunenwald and Stanley Politano. At a special meeting of the Association on September 3, 2008, Grunenwald and Politano represented that DRE was affiliated with Jacobs Entertainment, Inc., a gaming corporation that wanted to build a casino in the area. At a meeting of the Hancock County Planning and Zoning Commission, representatives of Jacobs Entertainment – supported by Grunenwald and Politano – argued that the Harbor House neighborhood was "blighted," and that it should rezoned by use of eminent domain. The rezoning effort eventually failed, and Jacobs never constructed a casino on or near the property.

The property owners who brought the state court case alleged that DRE's takeover of the Association's Board of Directors constituted a plan to build a casino on or near the Harbor House property. They seek money damages from Joffe, Grunenwald, and Politano, who allegedly engaged in self-dealing, breached the

5

neighborhood covenants, and breached their fiduciary duties as members of the Board of Directors. They also seek the dissolution of the Association.

The Court must compare these allegations with the terms of four different insurance policies: the Condo Policy issued to the Association [94-6], the Umbrella Policy issued to the Association [94-7], the Homeowner's Policy [94-8] issued to Joffe, and the Personal Umbrella Policy [94-8] issued to Joffe.

2.  *The Condo Policy – Comprehensive Business Liability Coverage*[1]

Section II of the Condo Policy [94-6], which addresses Comprehensive Business Liability, provides:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of **bodily injury**, **property damage**, **personal injury** or **advertising injury** to which this insurance applies . . . . This insurance applies only:
>
> 1. to **bodily injury** or **property damage** caused by an **occurrence** which takes place in the **coverage territory** during this policy period;
>
> 2. to **personal injury** caused by an **occurrence** committed in the **coverage territory** during the policy period. The occurrence must arise out of the conduct of your business . . . ;
>
> 3. to **advertising injury** caused by an **occurrence** committed in the **coverage territory** during the policy period.

---

[1]Although Plaintiff presented arguments to the contrary, the Court will assume that all of the Defendants' actions occurred during the effective time periods of the Condo Policy and Umbrella Policy, and that all of the individual Defendants' actions were undertaken within the course of their duties as officers of the Association.

The Condo Policy further provides that Plaintiff "will have the right and duty to defend any claim or suit seeking damages payable under this policy even though the allegations of the suit may be groundless, false or fraudulent." Therefore, the Condo Policy only covers claims arising from bodily injury, property damage, personal injury, or advertising injury.

The Condo Policy defines "bodily injury" as "**bodily injury**, sickness or disease sustained by a person, including death resulting from the **bodily injury**, sickness or disease at any time." "Property damage" means "physical injury to or destruction of tangible property, including all resulting loss of use of that property;" and "loss of use of tangible property that is not physically injured or destroyed, provided such loss of use is caused by physical injury to our destruction of other tangible property." "Personal injury" is:

> . . . injury, other than **bodily injury**, arising out of one or more of the following offenses:
>
>     a.    false arrest, detention or imprisonment;
>
>     b.    malicious prosecution;
>
>     c.    wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, by or on behalf of its owner, landlord or lessor;
>
>     d.    oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or
>
>     e.    oral or written publication of material that violates a person's right of privacy.

Finally, the Condo Policy defines "advertising injury" as:

> . . . injury arising out of one or more of the following offenses:
>
> a.  oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
>
> b.  oral or written publication of material that violates a person's right of privacy;
>
> c.  misappropriation of advertising ideas or style of doing business; or
>
> d.  infringement of copyright, title or slogan.

None of the allegations of the Amended Application [102-3] fall within the Policy's definitions of bodily injury, property damage, personal injury, or advertising damage. Therefore, the Condo Policy's Comprehensive Business Liability section does not provide coverage for the conduct alleged in the underlying case.

*3.  The Condo Policy – Directors and Officers Liability Coverage*

Section II of the Condo Policy contains an optional coverage category: Directors and Officers Liability ("Option DO"). That section provides:

> 1.  We will pay those sums that the insured becomes legally obligated to pay as damages, because of **"wrongful acts"** committed by an insured solely in the conduct of their management responsibilities for the Condominium/Association.
>
> 2.  This optional coverage does not apply to:
>
>     a.  any dishonest, fraudulent, criminal or malicious act . . . ;
>
>     * * *
>
>     f.  damages arising out of any transaction of the insured from which the insured will gain any personal profit or advantage which is not shared equitably by the

> Condominium/Association members . . . .

Option DO defines "wrongful acts" as "any negligent acts, errors, omissions or breach of duty directly related to the operations of the Condominium/Association."

In the underlying case, the state-court plaintiffs alleged that Defendants' individual and collective actions were part of a plan to take over the Association, delay reconstruction after Hurricane Katrina, re-zone the Harbor House property, and construct and operate a casino on or near it. According to the Amended Application [102-3] Defendants (1) "committed oppressive and/or fraudulent activity and breached their common law duty of loyalty and fiduciary duty to the Association;" (2) engaged in self-dealing; (3) served the interests of Jacobs Entertainment, rather than the Association and its members; (4) acted in bad faith; (5) engaged in "intentional misconduct and a knowing violation of the" Association's charter document; and (6) committed illegal, oppressive, and/or fraudulent acts.

In briefing, Defendants focused on various allegations in the Amended Application concerning "breach of fiduciary duty" and "breach of duty of care," arguing that the underlying case involved mere negligent acts and breaches of duty. These phrases may communicate negligence when read in isolation, but within the context of the full Amended Application, they communicate fraud, dishonesty, bad faith, and self-dealing. Indeed, the state-court plaintiffs specifically alleged that all of Defendants' actions were "illegal, oppressive, and/or fraudulent." Furthermore, a breach of fiduciary duty can arise from either misfeasance or malfeasance. *See Jackson v. Gordon*, 163 So. 502, 503 (Miss. 1935); *Hawkins v. Clay Cnty. Cotton Oil Co.*, 86 So. 291, 293 (Miss.

1920). In other words, a breach of fiduciary duty may be either negligent or intentional.

The breaches alleged in the underlying case are not the sort of errors, omissions, or negligent acts covered by Option DO. They fall squarely within the coverage exclusions for "dishonest, fraudulent, criminal or malicious" acts, and "damages arising out of any transaction of the insured from which the insured will gain any personal profit or advantage which is not shared equitably by the Condominium/Association members." Therefore, the optional Directors and Officers Liability section does not provide coverage for the conduct alleged in the underlying case.

*4. The Umbrella Policy*

The Umbrella Policy [94-7] provides:

If you are legally obligated to pay damages for:

1. **bodily injury**;

2. **personal injury**;

3. **property damage**; or

4. **advertising injury**,

to which this insurance applies, we will pay your **net loss** minus the **retained limit** . . . .

This insurance applies only:

1. to **bodily injury** or **property damage** caused by an **occurrence** which takes place in the coverage territory during the policy period;

2. to **personal injury** caused by an **occurrence** committed in the **coverage territory** during the policy period. The **occurrence** must arise out of the conduct of your business, excluding advertising, publishing, broadcasting or telecasting done by or for

> you;
>
> 3. to **advertising injury** caused by an **occurrence** committed in the **coverage territory** during the policy period. The **occurrence** must be committed in the course of advertising your goods, products or services.

The Umbrella Policy provides that Plaintiff will only have the right and duty to defend claims or suits covered by it, and its definitions are virtually identical to those in the Condo Policy.

As explained above, the Amended Application contains no allegations of bodily injury, personal injury, property damage, or advertising injury. Therefore, the Umbrella Policy does not provide coverage for the claims alleged in the underlying case.

> 5. *Joffe's Homeowners Policy*

Joffe's Homeowners Policy [94-8] provides:

> If a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**, we will:
>
> 1. pay up to our limit of liability for the damages for which the **insured** is legally liable; and
>
> 2. provide a defense at our expense by counsel of our choice.

Therefore, the Homeowners Policy only covers liability arising from "bodily injury" or "property damage" caused by an "occurrence." The Homeowners Policy defines "bodily injury" and "property damage" in essentially the same manner as the Condo Policy, discussed above. It defines an "occurrence" as "an accident" which results in "bodily injury" or "property damage."

11

The Amended Application [102-3] contains no allegations of an accident causing bodily injury or property damage. Therefore, the Homeowners Policy does not provide coverage for the claims asserted against Joffe in the underlying case.

6.  *Joffe's Personal Liability Umbrella Policy*

Joffe's Personal Liability Umbrella Policy [94-9] provides:

> If a claim is made or suit is brought against an **insured** for damages because of a **loss** for which the **insured** is legally liable and to which this policy applies, **we** will pay on behalf of the **insured**, the damages that exceed the **retained limit**.
>
> \* \* \*
>
> If a suit is brought against any **insured** for damages because of a **loss** to which this policy applies, **we** will provide a defense to the **insured** at **our** expense by counsel of **our** choice when the basis for the suit is a **loss** that is not covered by any other insurance policy but is covered by this policy.

The policy defines a "loss" as:

> a.  an accident, including accidental exposure to conditions, which first results in **bodily injury** or **property damage** during the policy period . . . ; or
>
> b.  the commission of an offense which first results in **personal injury** during the policy period.

The Amended Application [102-3] contains no allegations of a loss as defined by Joffe's Personal Liability Umbrella Policy. Therefore, it does not provide coverage for the claims asserted against him in the underlying case.

7.  *Summary*

For the reasons stated above, the Court finds that none of the four insurance policies at issue in this case provide coverage for the claims against Defendants in the

underlying case. State Farm, therefore, has no duty to defend the Association, Joffe, Grunenwald, or Politano.

### D.   *Duty to Indemnify*

"Under Mississippi law, an insurer's duties to defend and indemnify its insured are distinct and separate duties requiring the use of different standards." *Estate of Bradley v. Royal Surplus Lines Ins. Co.*, 647 F.3d 524, 529 (5th Cir. 2011). "Unlike the duty to defend, which can be determined at the beginning of the lawsuit, an insurer's duty to indemnify generally cannot be ascertained until the completion of litigation, when liability is established, if at all." *Id.* at 531. "This is because, unlike the duty to defend, which turns on the pleadings and the policy, the duty to indemnify turns on the actual facts giving rise to liability in the underlying suit, and whether any damages caused by the insured and later proven at trial are covered by the policy." *Id.* But "if there is no duty to defend, there can be no duty to indemnify." *Evanston Ins. Co. v. Neshoba Cnty. Fair Ass'n*, 442 F. Supp. 2d 344, 346 n. 1 (S.D. Miss. 2006).

For the same reasons stated above, the Court finds that the four insurance policies at issue in this case do not provide coverage for the damages claimed by the plaintiffs in the underlying case. Plaintiff, therefore, has no duty to indemnify Defendants for any damages that may eventually be awarded there.

### III. CONCLUSION

For the reasons stated above, the Court **denies** the Motion for Summary Judgment [102] filed by Defendants David Grunenwald; Harbor House Property Owners Association, Inc.; Carl Joffe; and Stanley Politano. But the Court **grants** the

Motion for Summary Judgment [105] filed by Plaintiff State Farm Fire and Casualty Company. Plaintiff has no duty to defend or indemnify Defendants against the claims asserted in the underlying state-court action. The Court will enter a separate judgment in accordance with Rule 58.

SO ORDERED AND ADJUDGED this 23rd day of April, 2013.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE